**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1180
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs, and the Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

WILLIAM ROJO, *on behalf of himself, FLSA Collective Plaintiffs, and the Class,*

                                        Plaintiff,

                    v.

WOODSIDE AUTO PARTS, LLC,
        d/b/a WOODSIDE AUTO PARTS, and
DAVID MYONES,

                                        Defendant.

---

Case No.:

**CLASS AND COLLECTIVE ACTION COMPLAINT**

Jury Trial Demanded

---

Plaintiff WILLIAM ROJO ("Plaintiff ROJO" or "Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby files this Class and Collective Action Complaint against WOODSIDE AUTO PARTS, LLC ("Corporate Defendant") and DAVID MYONES ("Individual Defendant") (each individually, "Defendant" or, collectively, "Defendants"), and states as follows:

## INTRODUCTION

1.     Plaintiff alleges, pursuant to the Fair Labor Standards Act as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), he and others similarly situated are entitled to recover from Defendants: (1) unpaid minimum wages; (2) unpaid overtime premium, due to a fixed salary scheme; (3)

1

liquidated damages; and (4) attorney's fees and costs.

2.      Plaintiff further alleges that, pursuant to the New York Labor Law ("NYLL"), he and others similarly situated are entitled to recover from Defendants: (1) unpaid minimum wages; (2) unpaid overtime premium, due to a fixed salary scheme; (3) unpaid spread of hours; (4) statutory penalties; (5) liquidated damages; and (6) attorney's fees and costs.

3.      Plaintiff further alleges, on behalf of himself and others similarly situated, that Defendants breached contracts Defendants made with them by failing to pay employer payroll taxes for them, as required by the Federal Insurance Contribution Act ("FICA").

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337, and 1343 and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

5.      Venue is proper in the Eastern District pursuant to 28 U.S.C. §1391.

## PARTIES

6.      At all relevant times herein, Plaintiff ROJO was and is a resident of Queens County, New York.

7.      Throughout the relevant period, Defendants collectively own and operate an auto parts store under the trade name "Woodside Auto Parts" (the "Store").

8.      Corporate Defendant WOODSIDE AUTO PARTS, LLC is a domestic limited liability company organized under the laws of the State of New York, with a principal place of business at 37-42 58th Street, Woodside, NY 11377 and an address for service of process located at 123 Sperry Blvd, New Hyde Park, NY 11040.

9.     Individual Defendant DAVID MYONES is the owner of Corporate Defendant. DAVID MYONES exercises operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs, and the Class. DAVID MYONES frequently visits the Store. DAVID MYONES exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff, FLSA Collective Plaintiffs, and the Class. At all times, employees of the Store could complain to DAVID MYONES directly regarding any of the terms of their employment, and DAVID MYONES would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees. DAVID MYONES exercised functional control over the business and financial operations of Corporate Defendant. DAVID MYONES had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs, and Class members, and could reprimand employees.

10.    At all relevant times, Corporate Defendant was and is an "enterprise engaged in commerce" within the meaning of the FLSA, NYLL, and regulations thereunder.

11.    At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs, and Class Members were directly essential to the business operated by Defendants.

12.    At all relevant times, Plaintiff was Defendants' employee within the meaning of NYLL § § 2 and 651.

13.    At all relevant times, Defendants were Plaintiff's employer within the meaning of NYLL § § 2 and 651.

14.    Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

3

## FLSA COLLECTIVE ACTION ALLEGATIONS

15.    Plaintiff brings claims for relief as a collective action pursuant to FLSA Section l6(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees, including drivers, parts pullers, dispatchers, among others, employed by Defendant on or after the date that is six (6) years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

16.    At all relevant times, Plaintiff and FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them their proper wages, including overtime, due to a fixed salary scheme. The claims of Plaintiff stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

17.    The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of FLSA, 29 U.S.C. 216(b). FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS

18.    Plaintiff brings claims for relief pursuant to Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all current and former non-exempt employees, including but not limited to drivers, parts pullers, dispatchers, among others, employed by Defendants on or after the date that is six (6) years before the filing of the Complaint in this case as defined herein (the "Class Period").

19.     All said persons, including Plaintiff, are referred to herein as the "Class" or "Class Members." The Class Members are readily ascertainable. The number and identity of the Class Members are able to be determined from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member are also able to be determined from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

20.     The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number is based are within the sole control of Defendants. There is no doubt that there are more than forty (40) members of the Class.

21.     Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief, that would be sought by each member of the Class in separate actions. All of the Class Members were subject to the same corporate practices of Defendants of: (i) failing to pay proper wages for all hours worked, including overtime, due to an invalid fixed salary scheme; (ii) failing to pay spread of hours premiums for workdays with a spread of ten or more hours; (iii) failing to pay minimum wage; (iv) failing to provide wage notices to Class Members, at the date of hiring and annually, per requirements of NYLL; and (v) failing to provide proper wage statements per requirements of NYLL.

22.     Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each

Class Member. Plaintiff and other Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

23.     Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

24.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided

by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

25.     Defendants and other employers throughout the state violate the NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide Class Members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

26.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a.  Whether Defendants employed Plaintiff and the Class Members within the meaning of NYLL and applicable state laws;

b.  What are and were the policies, practices, programs, procedures, protocols, and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiff and Class Members properly;

c.  At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiff and Class Members for their work;

d.  Whether Defendants properly notified Plaintiff and Class Members of their hourly rates;

e.  Whether Defendants operated their business with a policy of failing to pay Plaintiff and Class Members the prevailing minimum wage;

f.  Whether Defendants operated their business with a policy of failing to pay proper wages to Plaintiff and Class Members for all hours worked due to an

invalid fixed salary compensation;

g. Whether Defendants operated their business with a policy of failing to pay Plaintiff and Class Members overtime premium for hours worked in excess of forty (40) per week;

h. Whether Defendants properly paid employees their corresponding spread of hours premiums as required under the NYLL;

i. Whether Defendants properly paid employer payroll tax arising from their employment of Plaintiff and Class Members;

j. Whether Defendants provided proper wage statements informing all non-exempt employees of information required to be provided on wage statements as required under NYLL and applicable state laws; and

k. Whether Defendants provided proper wage and hour notice to employees, including, among others, the rate of compensation, trade name of employer, pursuant to the requirements of NYLL and applicable state laws.

## **STATEMENT OF FACTS**

27.     In or around 2014, Plaintiff ROJO was hired by Defendants to work as a parts puller for Defendants' Store "Woodside Auto Parts", located at 37-42 58th Street, Woodside, NY 11377. Plaintiff was terminated by Individual Defendant DAVID MYONES in or around September 2024.

28.     Throughout his employment, Plaintiff was scheduled to work six (6) days per week, Monday to Friday, from 8:00 a.m. to 6:00 p.m., with a thirty-minute lunch break, and Saturday, from 8:00 a.m. to 3:00 p.m., for a total of approximately fifty-four and a half (54.50) hours per week. FLSA Collective Plaintiffs and Class Members were similarly scheduled to work more than forty (40) hours each week.

29.     Throughout his employment, Plaintiff was compensated at a fixed salary rate of five hundred dollars ($500.00) per week in cash, regardless of the number of hours worked in any given week. Plaintiff's fixed daily pay throughout his employment averaged out to approximately nine dollars and seventeen cents ($9.17) per hour, below the prevailing NYC minimum wages of $15.00 (from 2019 to 2023) and $16.00 (in 2024) that Plaintiff was entitled to. Even if the fixed salary was to cover only 40 regular hours every week, the hourly rate ($500.00/40=$12.50/hr) is still below minimum wage. Class Members were paid similarly at daily fixed rates below the State minimum wage rates.

30.     At all times, Plaintiff was paid below the prevailing minimum wage that he was entitled to. There was never any agreement that the fixed weekly salary that Defendants paid Plaintiff covered the overtime hours in excess of forty (40) that Plaintiff worked each week. Class Members were similarly paid a fixed salary rate, without an agreement that their fixed salary would cover overtime hours.

31.     At all relevant times, Plaintiff ROJO regularly worked over forty (40) hours per week, but Defendants failed to pay him the proper overtime premium rate of one-and-one-half times his regular hourly rate for each hour exceeding forty (40) hours per workweek in violation of the FLSA and the NYLL. Plaintiff, FLSA Collective Plaintiffs, and Class Members were not paid all of their wages or their overtime premiums, at a rate of time and one half of their regular hourly rate, for all hours worked due to improper use of a fixed salary.

32.     Throughout Plaintiff's employment with Defendants, Plaintiff regularly worked shifts exceeding ten (10) hours, in duration, five (5) days a week. However, Plaintiff never received any "spread of hours" premium for working such shifts, as required under the NYLL. Similarly,

Class Members regularly worked shifts exceeding ten (10) hours in duration and were never paid "spread of hours" premium.

**WTPA Violation Claims**

33.    At no time during the relevant periods did Defendants provide Plaintiff or Class Members with proper wage notices, either at the beginning of employment or annually thereafter, as required by NYLL.

34.    Defendants further violated the WTPA by failing to provide Plaintiff and Class Members with proper wage statements, because wage statements that do not reflect the actual number of hours worked by the employee do not satisfy the requirements of the WTPA. *See Shi Yong Li v. 6688 Corp.*, 2013 U.S. Dist. LEXIS 148020, *6 (S.D.N.Y. Sept. 27, 2013) ("The wage statements provided failed to accurately indicate the amount of time actually worked by tipped employees") (emphasis added); *Copper v. Cavalry Staffing, LLC*, 132 F. Supp. 3d 460, 468 (E.D.N.Y. 2015) (holding that "the 'number of overtime hours' that appears on the wage statement should include every hour actually 'worked' by the employee") (emphasis added); *Campos v. Bkuk 3 Corp.*, 2021 U.S. Dist. LEXIS 151528, *30 (S.D.N.Y. Aug. 10, 2021) ("Thus, when paystubs were received, they were not accurate insofar as they did not accurately reflect the hours actually worked") (emphasis added).

35.    The cash payments that were disbursed to Plaintiff and Class Members were accompanied by nothing more than the handwritten note on the amount paid to Plaintiff, the form of payment, and the week the payment was for. The payments do not include any information related to regular and overtime rates of pay, regular and overtime hours worked, gross wages, deductions, allowances, and net wages as required by New York Lab. Law § 195(3).

36.     Therefore, Defendants directly violated the Wage Theft Protection Act ("WTPA") – incorporated in the NYLL – when Defendants knowingly and willfully operated their business with a policy of not providing wage notices and proper wage statements to Plaintiff and Class Members.

37.     In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. As one Court observed:

> Here, Plaintiffs allege that Defendants failed to furnish them with proper wage notices and statements, as required by NYLL §§ 195(1) and 195(3). These provisions were enacted as part of New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010 S.B. 8380. More specifically, the New York State Assembly passed the WTPA to address studies showing that a large number of employees were not being paid the wages owed to them, and that many employers were not adequately informing their employees of their wages and how they are calculated in language the employees could understand. *Id.* The New York State Assembly opined that existing penalties did not adequately deter employers from paying less than the wages owed, and stated that the WTPA would dramatically change this by increasing penalties for violating employees' rights. *Id.*

*Imbarrato v. Banta Mgmt. Servs.*, 2020 U.S. Dist. LEXIS 49740, *21-22 (S.D.N.Y. March 20, 2020)

38.     Here, Defendants' failure goes beyond generating a risk of harm to Plaintiff and Class Members. Defendants' conduct actually harmed Plaintiff and Class Members. Defendants' failure to provide wage notices and paystubs listing all hours actually worked and rates of pay, including overtime hours and overtime rates, deprived employees of the ability to contest the pay provided by Defendants, allowed Defendants to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiff's and Class Members' rights. This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled

to protection under federal and state law. Defendants' failure to provide wage notices and wage statements to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

39.     Had Defendants provided proper wage statements to Plaintiff and Class Members which accurately listed the total number of hours Plaintiff and Class Members actually worked, as required by law, Defendants would have had to either (a) increase the wages to correspond to the hours actually worked or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did *not* correspond to the hours the employee actually worked. Either possibility would have allowed Plaintiff and Class Members to vindicate their rights under the NYLL. The deprivation of these possibilities therefore constitutes an injury.

40.     "In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, 2023 U.S. Dist. LEXIS 38163, *18 (S.D.N.Y. Mar. 7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because 'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v. Elev8 Ctr. N.Y.*, LLC, 2023 U.S. Dist. LEXIS 122504, *21 (S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, *4 (S.D.N.Y. July 14, 2022)).

41.     Courts agree that the misreporting of wages constitutes a concrete injury cognizable under Article III:

> The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because

> "[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id*. at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because it is the reporting of income that triggers benefits, and losing benefits is an injury under *Lujan*. *Id*. Whether the employer in *Calderon* made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs' entitlement to benefits. *Id*. "[T]he plaintiff's real interest lies in ensuring that the [employer] make the proper reports of their income." *Id*.

*Coward*, 2011 U.S. Dist. LEXIS 74543, at *3-4.

42.     The case at bar is somewhat different from *Coward* inasmuch as Defendants actually underpaid Plaintiff and other employees rather than merely misreporting their income. But this distinction has no bearing on the question of Article III standing, since it is still the case that "it is the reporting of income that triggers benefits, and losing benefits is an injury." *Id*. Plaintiff and Class members lost benefits by virtue of how Defendants reported their income, and how Defendants reported employees' income was the direct outcome of the inaccuracies in employees' wage statements. That is why "Plaintiffs have standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

43.     Whether or not any Class Members are presently eligible for social security benefits is legally immaterial. *See id*. ("Although only citizens and aliens residing in the United States may receive benefits, 42 U.S.C. § 402(t), plaintiffs may eventually fulfill this requirement and therefore are entitled to keep their Social Security accounts accurate.").

44.     The *Calderon* court stressed that an employee's interest in ensuring that an employer properly report the employee's income is amplified by the difficulty of persuading the government to correct errors:

> The practical difficulty is that eligibility for Social Security benefits presumptively depends on reports that employers send to the government. A worker who seeks credit for unreported income bears the burden of proof, 42 U.S.C. § 405(c)(3), (4), which will be hard to carry if the employer has not furnished the customary

documentation. The government believes employers who report earnings, because these reports are costly to make--they entail paying a substantial tax. The government tends not to believe undocumented claims by employees, because these claims are essentially costless yet could establish entitlement to large pensions or disability benefits.

All of this means that the plaintiffs' real interest lies in ensuring that the Witvoets make the proper reports of their income.

*Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993)

45.    Because "[u]nder the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year,'" Plaintiff was irreversibly injured with respect to his social security benefits as soon as Defendants failed to send his W-2 to the IRS. 42 U.S.C. § 413(a)(2)(A)(ii).

46.    At all relevant times, Defendants had a policy of failing to provide wage notices and proper wage statements to employees, as required under the NYLL.

**Plaintiff's Breach of Contract and Unjust Enrichment Claims**

47.    At all relevant times, Defendants had a policy of paying Plaintiff and Class Members in cash and not issuing any statements with regards to proper federal tax deductions. As a result, Defendants failed to issue W-2 forms to Plaintiff and Class Members as required by federal law.

48.    Defendants failed to properly record, account for, and report to the IRS all monies paid to Plaintiff and Class Members. In failing to account for these monies in their IRS filings, Defendants failed to file proper W-2s in violation of 26 U.S.C. § 7434.

49.    In violating the Internal Revenue Code by failing to provide W-2 Forms. Defendants breached their contract with Plaintiff, FLSA Collective Plaintiffs, and Class Members to pay the employer's share of Social Security and Medicare taxes for each employee.

14

50.     In the alternative, Defendants unjustly enriched themselves at the expense of Plaintiff, FLSA Collective Plaintiffs and Class Members by retaining monies that should have been remitted to the IRS on behalf of Plaintiff, FLSA Collective Plaintiff and Class Members.

51.     As a result, Plaintiff, FLSA Collective Plaintiff and Class Members will either (1) be liable to the IRS for employer's share of FICA taxes or (2) upon retirement, suffer from diminished Social Security and Medicare benefits because they did not pay enough into the system.

52.     The employer's share of Social Security taxes is 6.2%. The employer's share of Medicare taxes is 1.45%. Accordingly, Defendants must compensate Plaintiff, FLSA Collective Plaintiffs and Class Members 7.65% of all their earnings from Defendants beginning six (6) years prior to the filing of this Complaint.

53.     Defendants are liable to Plaintiff and Class Members for failing to pay FICA taxes for the wages earned by Plaintiff, FLSA Collective Plaintiffs and Class Members.

54.     At all relevant times, Defendants knowingly and willfully operated their business with a policy of failing to compensate Plaintiff and Class Members the proper overtime rates for all their hours worked over forty (40) per week, in violation of the FLSA and the NYLL. Defendants' awareness and willfulness is obvious based on the fact that Defendants (i) scheduled and required Plaintiff and Class Members to work over forty (40) hours per week, and (ii) set Plaintiff's and Class Members' pay to fixed-rate salaries that compensated their overtime hours at the same rate as their regular hours.

55.     Defendants knowingly and willfully operated their business with a policy of not paying the prevailing minimum wage, as required by the NYLL.

56.     Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff and Class Members their spread of hours premium for hours worked over ten (10) in a shift, in violation of the NYLL.

57.     Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and Class Members in this litigation, and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF FAIR LABOR STANDARDS ACT

58.     Plaintiff repeats each and every previous allegation in this Class and Collective Action Complaint as if fully set forth herein.

59.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

60.     At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

61.     At all relevant times, Corporate Defendant had a gross annual revenue in excess of $500,000.

62.     At all relevant times, Defendants had a policy and practice of failing to pay Plaintiff and FLSA Collective Plaintiffs at the proper overtime compensation at rates of not less than one and one-half times their regular rates of pay for each hour worked in excess of forty (40) hours in a workweek, due to a fixed salary scheme.

16

63.     Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case, and if necessary, will seek leave of Court to amend this Complaint to set forth the precise amount due.

64.     Defendants knew of and/or showed a willful disregard for the provisions of FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs their proper wages, including their proper overtime premium, when Defendants knew or should have known such was due.

65.     Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under FLSA.

66.     As a direct and proximate result of Defendants' willful disregard of FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to FLSA.

67.     Due to the intentional, willful, and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid overtime premiums, plus an equal amount as liquidated damages.

68.     Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorney's fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

## **VIOLATION OF NEW YORK LABOR LAW**

69.     Plaintiff repeats each and every previous allegation in this Class and Collective Action Complaint as if fully set forth herein.

70.     At all relevant times, Plaintiff and Class Members were employed by Defendants within the meaning of NYLL §§ 2 and 651.

71.     Defendants willfully violated Plaintiff's and Class Members' rights by failing to pay them the prevailing New York State minimum wages.

72.     Defendants willfully violated Plaintiff's and Class Members' rights by failing to pay them their proper overtime compensation at rates of not less than one and one-half times their regular rates of pay for each hour worked in excess of forty (40) hours in a workweek due to a fixed salary scheme.

73.     Defendants knowingly and willfully failed to pay Plaintiff and Class Members their spread of hours premiums for shifts lasting longer than ten (10) hours in duration, in violation of the NYLL.

74.     Defendants failed to properly notify Plaintiff and Class Members of their overtime rates, in direct violation of the NYLL.

75.     Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and Class Members wage notice, at date of hiring and annually thereafter, as required under NYLL.

76.     Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and Class Members wage statements, as required under NYLL.

77.     Due to Defendants' NYLL violations, Plaintiff and Class Members are entitled to recover from Defendants unpaid minimum wages, unpaid overtime premiums, unpaid spread of hours premium, reasonable attorney's fees, liquidated damages, statutory penalties, and costs and disbursements of the action, pursuant to the NYLL.

## COUNT III

## **BREACH OF CONTRACT**

78.     Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein and further alleges as follows.

79.    "In New York, all contracts imply a covenant of good faith and fair dealing in the course of performance … This covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract … [T]he duties of good faith and fair dealing … encompass any promises which a reasonable person in the position of the promisee would be justified in understanding were included [in the contract]." *511 W. 232nd Owners Corp. v. Jennifer Realty Co*., 98 N.Y.2d 144, 153, 773 N.E.2d 496, 500-501, 746 N.Y.S.2d 131, 135-136, 2002 N.Y. LEXIS 1579, *10-11 (2002).

80.    When Plaintiff and Class Members accepted offers of employment form Defendants, the parties entered a contract, and the covenant of good faith and fair dealing implicit therein required Defendants to pay Plaintiff and Class Members in accordance with all applicable laws. This involved, *inter alia*, a duty by abide by the Internal Revenue Code and pay all required FICA taxes.

81.    Defendants breached this duty when they decided to pay Plaintiff and Class Members in cash and not file any W-2. As a result, Plaintiff and Class Members lost part of the benefit of the bargain for which they contracted, suffering a loss in the amount of the FICA taxes that Defendants should have paid on their behalf but did not.

**COUNT IV**

**<u>UNJUST ENRICHMENT</u>**

82.    Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein and further alleges as follows.

83.    To state a claim for unjust enrichment, a plaintiff must allege that: "(1) the [defendant] was enriched, (2) at [plaintiff's] expense, and (3) that it is against equity and good

conscience to permit the [defendant] to retain what is sought to be recovered." *Georgia Malone & Co., Inc. v Rieder*, 19 NY3d 511, 516 [2012] (internal quotations omitted).

84.    Defendants were unjustly enriched when they kept for themselves money that should have been paid to the Internal Revenue Service as Defendants' employer FICA contribution. Such came at the expense of Plaintiff and Class Members because they will either (1) be liable to the IRS for the employer's share or (2) upon retirement suffer from diminished Social Security and Medicare benefits because they did not pay enough into the system.

85.    Accordingly, all sums that Defendants should have paid to the IRS should be disgorged from Defendants and transferred to Plaintiff and Class Members.

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE**, Plaintiff, on behalf of himself, FLSA Collective Plaintiffs, and Class Members, respectfully request that this Court grant the following relief:

a.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

b.    An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.    An award of unpaid minimum wages due under the NYLL;

d.    An award of unpaid overtime premium due under the NYLL and FLSA;

e.    An award of unpaid spread of hours premiums, due under the NYLL;

f.    An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages pursuant to 29 U.S.C. § 216;

g.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages, including overtime, pursuant to the FLSA and the NYLL;

h.  An award of statutory penalties as a result of Defendants' failure to comply with wage notice and wage statement requirements under NYLL;

i.  An award of statutory penalties, prejudgment, and post judgment interest, costs, and expenses of this action together with reasonable attorney's fees and expert fees and statutory penalties;

j.  Contractual damages for Defendants' failure to keep their promise to abide by the Internal Revenue Code and fund Plaintiff's and Class Members' retirement through FICA contributions;

k.  Designation of Plaintiff as Representative of FLSA Collective Plaintiffs;

l.  Designation of this action as a class action pursuant to F.R.C.P. 23;

m.  Designation of Plaintiff as Representatives of the Class; and

n.  Such other and further relief as this Court deems just and proper.

## <u>JURY DEMAND</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Date: March 14, 2025                              Respectfully submitted,
      New York, New York

By:  /s/ *CK Lee*
      C.K. Lee, Esq.
      **LEE LITIGATION GROUP, PLLC**
      C.K. Lee (CL 4086)
      Anne Seelig (AS 3976)
      148 W. 24th Street, 8th Floor
      New York, NY 10011
      Tel.: 212-465-1180
      Fax: 212-465-1181
      *Attorneys for Plaintiff,*
      *FLSA Collective Plaintiffs, and the*
      *Class*